IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 19, 2008 Session

GEORGIA-PACIFIC LLC, ET AL. v. SWIFT TRANSPORTATION
CORPORATION

Direct Appeal from the Chancery Court for Shelby County
No. CH-07-1107-2     Arnold Goldin, Chancellor

No. W2008-00344-COA-R3-CV - Filed September 29, 2008

This appeal involves the indemnity and insurance provisions of a contract, which must be interpreted according to Georgia law.  The trial court found that the defendant had no duty to indemnify or insure the plaintiff for a claim based on the plaintiff's own negligence.  We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jerry E. Mitchell, Memphis, TN, for Appellants

Carl Wyatt, Lewis W. Lyons, Memphis, TN, for Appellee

OPINION

## I.  FACTS & PROCEDURAL HISTORY

Swift Transportation Corporation ("Swift Transportation") entered into a series of contracts with Georgia-Pacific Corporation ("G-P"), whereby Swift Transportation would provide vehicles and drivers for the transportation of G-P's property.  The contract provided that it was to be interpreted in accordance with the laws of the state of Georgia.  The contract contained the following relevant provisions[1]:

7.    CARRIER [Swift Transportation] agrees to assume all risks growing out of or occurring in the performance of this Agreement by CARRIER, its agents or employees for:

(a)    any and all injury or damage arising out of performance of this Agreement to (1) the property and premises of G-P, (2) the property and premises of any other person, and (3) any property or equipment used or to be used or incorporated in the performance of this Agreement.

(b)    any death or injury to any person or persons, whether or not employed by the CARRIER, however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, except when caused by the negligence of G-P, its agents and employees.

(c)    CARRIER further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify G-P from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by CARRIER, its agents or employees, or the conduct of the business of CARRIER, or the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise, provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by any act or omission of G-P.

8.    CARRIER agrees to obtain insurance covering the risks incident to this Agreement, including Worker's Compensation and all other types of insurance as are currently required by 49 CFR Part 387 or such future state, local or federal regulations as may be implemented from time to time.  CARRIER shall obtain such insurance and any additional insurance specified in Appendix A in the amounts

---

[1] Both parties stated at oral argument that paragraph 7(c) should have been listed as a separate paragraph rather than a subsection.

specified in Appendix A. All insurance policies are to be written by reliable, solvent, and reputable insurance companies.

Appendix A to the contract provided:
> CARRIER agrees to obtain and maintain at its own cost, during the term of this Agreement, insurance covering the risks incident to this Agreement with the following minimum limits:
> i.      Workers' Compensation with statutory limits;
> ii.     Employer's Liability with $100,000 per occurrence;
> iii.    Commercial General Liability insurance, covering bodily injuries and death and property damage, Independent Contractors, Personal Injury, Contractual with limits of $500,000 per occurrence and $1,000,000 in the General Aggregate;
> iv.     Automobile Liability, covering owned, non-owned, hired, and other vehicles, with a combined single limit of $750,000 per occurrence. For a motor carrier involved in the transportation of material which the DOT identifies as hazardous, the requirement is $5,000,000.
> v.      Cargo Liability covering damage to or loss of cargo or freight transported on behalf of G-P with limits of $50,000 per occurrence.

> In the event that federal or state law or regulation requires more extensive liability coverage than the limits listed above, CARRIER shall procure and maintain such additional coverage at its expense.

> CARRIER shall be responsible for payment of any and all deductibles from insured claims under its policies. Carrier shall cause G-P to be named as an additional insured on its Commercial General Liability and Automobile Liability policies. The coverage afforded under any insurance policy obtained by CARRIER pursuant to this Appendix shall be primary coverage regardless of whether or not G-P has similar coverage. Evidence of insurance, including where applicable the fact that G-P has been named as an additional insured, shall be filed with G-P before CARRIER transports any freight for G-P, including renewals thereof. Policies shall neither be canceled nor changed without at least ten (10) days prior written notice to G-P.

Swift Transportation initially maintained a commercial general liability insurance policy, but it later elected to become self-insured, and it notified G-P of its decision without objection.

On or about November 22, 2004, a Swift Transportation driver, David Sprouse, made a delivery at one of G-P's truck terminals in Louisiana and was allegedly injured when he fell down a stairway. Mr. Sprouse and his wife subsequently filed a lawsuit in a federal district court against G-P, alleging that Mr. Sprouse's injuries were proximately caused by the negligence of G-P. Specifically, their complaint alleged that G-P was negligent in failing to warn Mr. Sprouse that its concrete stairs and landing were cracked and broken, and failing to provide adequate lighting and handrails on the stairway.

G-P tendered the defense to Swift Transportation, claiming that it was entitled to a defense and indemnification under the indemnity and insurance provisions in the contract. Swift Transportation declined to defend or indemnify G-P because the claim was based on the negligence of G-P. G-P[2] then filed a complaint for declaratory judgment and specific performance in chancery court, seeking an order that would require Swift Transportation to defend, hold harmless, and indemnify G-P for losses arising from the Sprouse litigation. At some point after the complaint was filed, G-P settled the Sprouse litigation out of court. G-P continued to assert that it was entitled to indemnification from Swift Transportation because it settled the Sprouse claim for an amount less than the $500,000 limit of the contractually required commercial general liability insurance policy. Of course, no such policy existed because Swift Transportation elected to become self-insured. According to G-P, however, the contract's insurance provision obligated Swift Transportation to provide coverage to G-P for *any* liability up to $500,000.

Swift Transportation filed a motion to dismiss G-P's complaint for failure to state a claim, asserting that, pursuant to the contract, it had no duty to indemnify G-P because the action giving rise to the claim was caused by an act or omission of G-P. Swift Transportation claimed that the insurance provision only protected G-P in the event that G-P was sued for injury or death on account of Swift Transportation's negligence. G-P then filed a motion for summary judgment. Following a hearing on both motions, the trial court ruled that Swift Transportation had no duty to defend, indemnify, or insure G-P for claims arising out of G-P's own negligence.[3] Accordingly, the court entered an order denying G-P's motion for summary judgment and granting summary judgment in favor of Swift Transportation.[4]

## II. ISSUES PRESENTED

G-P has timely filed its notice of appeal and presents the following issue for review: whether the trial court erred in granting summary judgment in favor of Swift Transportation and denying G-P's motion for summary judgment. For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

The interpretation of a contract is a matter of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). We review a trial court's conclusions of law *de novo* with no presumption of

---

[2] The complaint was filed by Georgia-Pacific, LLC, f/k/a Georgia-Pacific Corporation, and by Georgia-Pacific Corrugated, LLC, an indirect wholly owned subsidiary of Georgia-Pacific, LLC, which now owns the facility where Mr. Sprouse was injured. For ease of reference, we will refer to the plaintiffs collectively as G-P.

[3] The final order states, "Both sides agree that GP and Swift operated as if Swift continued to carry commercial general liability insurance and that its self insurance status is of no consequence to the issues before the court."

[4] The final order also states that Swift Transportation's motion to dismiss was treated as one for summary judgment because the court considered matters outside of the pleadings.

correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

In support of their arguments on appeal, both parties principally rely upon two recent Georgia cases: ***Ryder Integrated Logistics, Inc. v. BellSouth Telecommunications, Inc.***, 281 Ga. 736, 642 S.E.2d 695 (2007) and ***Service Merchandise Co. v. Hunter Fan Co.***, 274 Ga. App. 290, 617 S.E.2d 235 (2005).

The facts in ***Ryder*** were similar to those involved in this case. Ryder supplied transportation and logistical services to BellSouth Communications, and a Ryder employee was injured at a BellSouth facility. *Id.* at 736, 642 S.E.2d at 696. When the Ryder employee sued BellSouth for negligence, BellSouth tendered the defense of the suit to Ryder, and Ryder refused to defend or indemnify BellSouth. *Id.* at 736, 642 S.E.2d at 696. BellSouth eventually settled the employee's claim.

The parties' contract provided that Ryder would indemnify and hold BellSouth harmless from "any and all" liabilities or claims made by "anyone for injuries of any kind . . . resulting from [Ryder's] negligent or willful acts or omissions . . . or resulting from the use of [Ryder's] services[.]" *Id.* at 737, 642 S.E.2d at 696. The contract also contained a separate insurance provision requiring Ryder to maintain insurance, including, but not limited to a commercial general liability insurance policy with limits of at least $1 million. *Id.* at 738, 642 S.E.2d at 697. Ryder was required to name BellSouth as an additional insured on the policy with respect to work performed under the contract. *Id.* The trial court found that both the insurance and indemnity provisions were applicable to the claim, so that Ryder was required to provide insurance coverage and/or indemnification to BellSouth. *Id.*

On appeal, the Supreme Court of Georgia first concluded that the indemnity provision did not obligate Ryder to indemnify BellSouth for the employee's claim based on BellSouth's negligence. The Court explained the general rule in Georgia that an agreement to indemnify does not make the indemnitor responsible for acts attributable to the indemnitee's own negligence unless the parties' agreement explicitly states otherwise:

> Public policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault. Thus it is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered. The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed in them and every presumption is against such intention. In the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on

-5-

account of the latter's own negligence. Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language.

*Id.* at 737-38, 642 S.E.2d at 697 (citing *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693, 415 S.E.2d 308 (1992)) (internal quotations omitted). Because the contract at issue in *Ryder* did not expressly state that the indemnity provision applied to the negligence of BellSouth, the indemnity provision was unenforceable as to the employee's negligence claim. *Id.* at 738, 642 S.E.2d at 697.

Regarding the insurance provision, however, the Court stated that "there was no appeal of the trial court's determination that the insurance provision was valid even if the indemnity provision was not." *Ryder*, 281 Ga. at 738, 642 S.E.2d at 697, n.2. Therefore, the enforceability of the contract's insurance requirement was not addressed by the Georgia Court of Appeals or the Georgia Supreme Court, and both courts went on to address the language of the policy that was procured and various other related issues.

In *Service Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 617 S.E.2d 235 (2005), the Georgia Court of Appeals squarely addressed the issue of the enforceability of an additional insurance clause. Service Merchandise (or "SM") had entered into agreements with Hunter Fan Company for the purchase of air purifiers. *Id.* at 293, 617 S.E.2d at 238. The contract obligated Hunter Fan Company to indemnify Service Merchandise for lawsuits and liabilities arising out of a death or injury allegedly caused by a defective Hunter Fan Company product. *Id.* The contract also required Hunter Fan Company to obtain liability insurance with Service Merchandise listed as an additional insured on the policy. *Id.* at 297, 617 S.E.2d at 241.

A customer filed a wrongful death suit against Service Merchandise after it allegedly failed to provide necessary information during a recall of a defective Hunter Fan Company product. *Id.* at 290-91, 617 S.E.2d at 236. Service Merchandise claimed that it was entitled to indemnification from Hunter Fan Company. *Id.* The Georgia Court of Appeals first found that the indemnity provision was inapplicable because it "failed to expressly, plainly, clearly, and unequivocally state" that Hunter Fan Company agreed to indemnify Service Merchandise for Service Merchandise's own negligence. *Id.* at 296, 617 S.E.2d at 240. Service Merchandise then argued that the insurance clause independently required Hunter Fan Company to defend and indemnify it, as a matter of law, for the customer's claim. *Id.* at 297, 617 S.E.2d at 241. The Court rejected this argument as well, because "nothing in [the contract] obligated Hunter to *insure* against SM's negligence[.]" *Id.* (emphasis added). The Court explained:

> The requirement that Hunter name SM as an additional insured did not create an independent basis that would require Hunter to defend and indemnify SM for SM's own negligence or gross negligence. To find otherwise would effectively negate the public policy that one cannot be indemnified for one's own negligence unless the contracting parties expressly and explicitly agree to such indemnification in writing.

*Id.* at 297, 617 S.E.2d at 241.

-6-

Applying these principles to the case at bar, we agree with the trial court's conclusion that Swift Transportation Company is not required to indemnify G-P for the settlement of the Sprouse litigation, under the indemnity provision or the insurance provision, as the Sprouse claim was based on the alleged negligence of G-P. The parties' indemnity agreement did not expressly state that it covered the negligence of the indemnitee, G-P, as required under Georgia law. To the contrary, the contract expressly stated that the hold harmless and indemnification provisions "shall not apply to the extent that the action giving rise to the claim was caused by any act or omission of G-P." We also conclude that the insurance provision does not require Swift Transportation to indemnify G-P for the negligence claim. As in **Service Merchandise**, the contract did not require Swift Transportation to insure against G-P's own negligence, and the requirement that Swift Transportation name G-P as an additional insured did not create an independent basis that would require indemnification for G-P's own negligence. *Id.* at 297, 617 S.E.2d at 241. Swift Transportation agreed to obtain a commercial general liability policy "covering the risks incident to this Agreement." However, Swift Transportation had assumed all risks occurring in the performance of the Agreement *except for* the risk of death or injury "when caused by the negligence of G-P, its agents and employees."

G-P argues that the very "point" or "idea" of obtaining coverage under a general liability policy is to protect the insured from its own negligence, and that the reason for being named as an additional insured on another party's liability policy is necessarily the same – to protect against your own negligence. We disagree with this characterization. There are numerous types of additional insureds under commercial general liability policies. 1 David L. Leitner et al., *Law and Prac. of Ins. Coverage Litig.* § 4:11 (2008); *see also* David R. Hendrick, *Insurance Law: Understanding the Basics Regarding "Additional Insureds"* 690 PLI/Lit 591, 618-21 (2003). Although in some circumstances, the parties may provide insurance against the additional insured's own negligence, that is not always the case. An additional insured's coverage may be limited to instances where the additional insured is vicariously liable for the wrongs of the named insured. In **BP Chemicals, Inc. v. First State Ins. Co.**, 226 F.3d 420, 423 (6th Cir. 2000), the Sixth Circuit found that an additional insured under a commercial general liability policy was not provided with coverage for its own negligence. Neither the indemnity agreement nor the additional insured endorsements expressly stated an intention to indemnify the additional insured against its own negligence. *Id.* The Court concluded that the most reasonable construction of the additional insured provision was that it was intended to assure performance of the parties' indemnity agreement. *Id.* at 428.

In sum, although an additional insured can be covered for its own negligence, we find nothing in this contract to require such coverage. The parties' contract set forth various risks assumed by Swift Transportation and obligated Swift Transportation to obtain an insurance policy to cover the risks incident to the agreement. There is nothing in the contract to indicate an agreement that Swift Transportation would obtain insurance against G-P's own negligence.

Finally, G-P argues that it was entitled to insurance against its own negligence because Appendix A of the Agreement states, "The coverage afforded under any insurance policy obtained by CARRIER pursuant to this Appendix shall be primary coverage regardless of whether or not G-P

-7-

has similar coverage." This type of "other insurance" clause addresses the situation in which more than one source of insurance coverage is available for a loss, and there is a question as to which insurer has "primary," or immediate, responsibility for providing coverage. *See **Dairyland Ins. Co. v. State Farm Auto. Ins. Co.**, 289 Ga. App. 216, 217, 656 S.E.2d 560, 562 (2008); David R. Hendrick, *Insurance Law: Understanding the Basics Regarding "Additional Insureds"* 690 PLI/Lit 591, 626-27 (2003). G-P cites no authority for the notion that this clause alters the scope of coverage initially provided to G-P.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellants, Georgia-Pacific, LLC, f/k/a Georgia-Pacific Corporation, Georgia-Pacific Corrugated, LLC, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.